**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MORGAN STANLEY SMITH BARNEY LLC,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No.** |
| | : | |
| v. | : | |
| | : | |
| **STEVEN GLAZER,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MORGAN STANLEY'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.     INTRODUCTION**

Plaintiff Morgan Stanley Smith Barney LLC ("Morgan Stanley") submits this Memorandum of Law in support of its Motion for a Temporary Restraining Order and Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendant Steven Glazer ("Glazer") from violating his contractual, trade secret and other obligations to Morgan Stanley.

As emphasized in Morgan Stanley's Complaint, and the accompanying Affidavit of Blake MacKenzie, since resigning from Morgan Stanley, Glazer has been actively soliciting clients in violation of his Financial Advisor Employment Agreement ("Agreement").  In further violation of his Agreement, Glazer improperly retained and, upon information and belief, is using Morgan Stanley's confidential client information.

In fact, only a week prior to his resignation, one of Glazer's former assistants, Stacey Ness, emailed him a document entitled "Last Review Sheet."  (Exhibit "B" to the Complaint).

His Last Review Sheet included client identities as well as account numbers and asset information for over 100 client accounts.

On the same day he resigned (Friday, February 15) Glazer emailed the Last Review Sheet -- containing all of this highly confidential, proprietary and non-public client information -- to his personal gmail address. (*Id.*). Even more troubling, the time on Glazer's email is 7:55 PM, after he resigned from Morgan Stanley. (*Id.*). In other words, it appears based on the timing of Glazer's email, that before his access to Morgan Stanley's systems was shut off, Glazer stole this confidential information by emailing from his Morgan Stanley email address to his personal gmail address.

Also, two days before resigning, Glazer emailed from his Morgan Stanley email address to his personal gmail address confidential and proprietary information on another Morgan Stanley client. (Exhibit "C" to the Complaint). This particular email was sent at 10:09 PM, long after the Morgan Stanley branch office had closed for the day. In addition, upon information and belief, Glazer secretly confiscated *original client files on dozens of Morgan Stanley clients*. Morgan Stanley has reason to believe these confiscated original files included, among other things, sensitive client financial information and investment proposals for Morgan Stanley's clients and/or prospective clients.

## II.  BACKGROUND

At the commencement of his employment with Morgan Stanley in 2011, Glazer signed the Agreement (Exhibit "A" to the Complaint). In paragraph 2.1 of the Agreement, Glazer expressly agreed that all client information, including "(a) customer files, lists, ... (b) the names, addresses, telephone numbers" of Morgan Stanley clients are "valuable and proprietary to MSSB" and "highly confidential."

In paragraph 2.3 of his Agreement, Glazer agreed that he would not use Morgan Stanley's confidential client information for any purpose other than conducting business at Morgan Stanley and that if his employment ever terminated, he would immediately return all such information to Morgan Stanley. In paragraph 2.4 of his Agreement, Glazer further agreed that he would not disclose any confidential information to anyone, either during or subsequent to his employment at Morgan Stanley, except in the ordinary course of Morgan Stanley business.

Paragraph 3.2 of Glazer's Agreement, entitled "Unfair Competition", contains his non-solicitation covenant. Specifically, Glazer promised as follows: "For a period of one year following termination of your employment for any reason, you will not solicit or attempt to solicit, directly or indirectly, any of MSSB's customers who were serviced by you, or whose names became known to you, while in the employ of MSSB, with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which MSSB or any of its affiliates is engaged."

Glazer acknowledged that Morgan Stanley would be entitled to injunctive relief to the extent he breached his obligations under the Agreement. Paragraph 4 of Glazer's Agreement expressly provides, in pertinent part: "You understand and agree that MSSB will suffer immediate and irreparable harm and that money damages will not be adequate to compensate MSSB or to protect and preserve the status quo pending arbitration...."

Glazer's commitment to maintain the confidentiality of Morgan Stanley's client information is also set forth in numerous other agreements. For instance, Glazer agreed to comply with Morgan Stanley's <u>Code of Conduct</u>. (Exhibit **"D"** to the Complaint). The <u>Code of Conduct</u> defines "confidential information" "as information that is not generally known to the public" about "<u>our clients</u>, or other parties with whom we and our affiliates have a relationship

and who have an expectation of confidentiality." (Exhibit "D" to the Complaint at 36) (emphasis added). The Code of Conduct further states, "You must protect all confidential information, regardless of its form or format" and "only access confidential information that you need and are authorized to see in order to perform your responsibilities." (*Id*.).

On Friday, December 17, 2017, Glazer resigned his employment from Morgan Stanley to begin immediately working at Asset Management Group. In fact, in his haste to resign, Glazer did not even submit a resignation letter at first. Instead, he handwrote a resignation letter on the spot. (Exhibit "E" to the Complaint).

Glazer appears to have secretly confiscated original files relating to dozens of Morgan Stanley clients and/or other confidential information. Not only has Glazer improperly retained confidential information pertaining to Morgan Stanley clients, Morgan Stanley believes that Glazer is using this information to solicit Morgan Stanley clients in further violation of his express obligations to Morgan Stanley. In short, Glazer's violations of his non-solicitation and confidentiality obligations are blatant.

### III. MORGAN STANLEY IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

It is well-settled that parties seeking preliminary injunctive relief must demonstrate that "(1) they have a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm which the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Goodman v. Illinois Department of Financial and Professional Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). As set forth below, Morgan Stanley easily meets these requirements. In fact, courts in Illinois and throughout the country have emphasized that immediate injunctive relief is critical in these cases in order to "preserve the

meaningfulness" of the arbitration process and to ensure that the arbitration is not rendered a "mere hollow formality." *See, e.g., Merrill Lynch v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985) (immediate injunctive relief necessary to prevent arbitration from being a "hollow formality" and to preserve "meaningfulness" of the arbitration; clients cannot be "unsolicited").

### A. Morgan Stanley is Likely to Succeed on the Merits

Morgan Stanley is entitled to a temporary restraining order and preliminary injunctive relief to enforce Glazer's Agreement with Morgan Stanley and to prevent against further misappropriation and misuse of Morgan Stanley's trade secret client list.

#### i. Violation of Glazer's Agreement with Morgan Stanley

Morgan Stanley's right to relief is clearly set forth in the express language of Glazer's Agreement, which contains his written promise not to confiscate Morgan Stanley's client information and not to solicit clients of Morgan Stanley. The non-solicitation provision in Glazer's Agreement is clearly enforceable under New York law, which governs the enforceability of the Agreement. (Exhibit "A" at paragraph 9). In fact, federal and state courts in New York routinely have upheld far more restrictive prohibitions than those at issue here. *See*, *e.g.*, *Ticor Title Ins. Co. v. Cohen*, 173 F. 3d 63 (2d Cir. 1999) (enforcing 6 month *non-compete* provision); *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220 (N.Y. 1999) (enforcing 18 month restrictive covenant prohibiting defendant from *servicing clients of former employer*). There simply is no doubt that Morgan Stanley is entitled to temporary injunctive relief enforcing the prohibition against soliciting Morgan Stanley clients contained in Defendant's Agreement. *See Merrill Lynch v. Rahn*, 73 F. Supp. 2d 425, 429 (S.D.N.Y. 1999) (granting preliminary injunction, enforcing non-solicitation agreement, and noting that the similar relief requested here is "consistently granted").

New York courts routinely grant injunctive relief to securities firms under virtually identical circumstances. *See*, *e.g.*, *Pace Securities v. Pollack*, 550 N.Y.S.2d 299, 300 (N.Y. App. Div. 1990) (New York Appellate Court described injunctive relief enforcing nondisclosure and non-solicitation clauses as "narrowly drawn to prevent defendants from reaping the fruits of their improper conduct, while still allowing them to compete freely in the marketplace."); *Alliance Capital Management, L.P. v. McCool*, 2004 N.Y. Misc. LEXIS 3260 (N.Y. Sup. Ct. 2004) (New York Supreme Court enforced two-year non-solicitation covenant of another financial services firm); *McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan*, 498 N.Y.S.2d 146 (N.Y. App. Div. 1986) (appellate court upheld injunctive relief).

Although governed by New York law, Glazer's Agreement also is clearly enforceable under Illinois law. In Illinois, a restrictive covenant must be reasonable and necessary to protect a legitimate business interest of the employer based on the "totality of the circumstances." *Reliable Fire Equip. Co. v. Arredondo*, 2011 IL 111871, ¶ 17, 965 N.E.2d 393, 396 (2011); *Lawrence and Allen, Inc v. Cambridge Human Resource Group*, 685 N.E.2d 434, 441 (Ill. App. 1997).

A legitimate business interest exists if either: 1) there are "near permanent business relationships" with customers; or 2) the defendant had access to trade secrets or other confidential information of the employer by virtue of his or her employment. *Lawrence and Allen*, 685 N.E.2d. at 443. Not only did Glazer have access to trade secrets by virtue of his employment (see discussion *infra*), the financial advisor relationship is precisely the type of professional services relationship that has led courts to conclude that it involves "near-permanent" relationships. *See, e.g., Cuna Mutual Life Ins. Co. v. Kuperman*, 1998 U.S. Dist. LEXIS 10320, at *20 (N.D. Ill. 1998) (enforcing non-solicitation provision against broker;

6

making a finding of "near-permanent relationships" and noting specifically that "customer loyalty is characteristic in a service business, such as the financial service business" and "long-term relationships are important in the financial service business ..."); *see also Lawrence and Allen*, 685 N.E.2d at 444 ("[A] near-permanent relationship with clients is inherent in the provision of professional services.").

Applying Illinois law, federal and state courts routinely have granted injunctive relief to enforce the same type of non-solicitation and non-disclosure provisions at issue here. *See*, *e.g.*, *Merrill Lynch v. Salvano*, 999 F.2d 211, 215 (7th Cir. 1993) ("We are unable to conclude that the district court abused its discretion in granting a TRO enjoining the defendants from soliciting any business from Merrill Lynch clients and from disclosing Merrill Lynch records."); *Merrill Lynch v. Cross*, 1998 U.S. Dist. LEXIS 3188 (N.D. Ill. 1998) (issuing injunctive relief to enforce non-solicitation and non-disclosure provisions). *See also A-Tech Computer Services, Inc. v. Soo Hoo,* 254 Ill. App. 3d 392, 627 N.E.2d 21 (1st Dist. 1993); *Tyler Enterprises of Elwood, Inc. v. Shafer,* 214 Ill. App. 3d 145, 573 N.E.2d 863 (3rd Dist. 1991); *Wolf and Company v. Waldron*, 51 Ill. App. 3d 239, 366 N.E.2d 603 (1st Dist. 1977); *The Wessel Co., Inc. v. Busa*, 28 Ill. App. 3d 686, 329 N.E.2d 414 (1st Dist. 1975).

Furthermore, it also should be emphasized that the injunctive relief Morgan Stanley is requesting is extremely narrow in scope. Under the proposed Order, Glazer is free to work for a competing entity, without restriction; provided only that he not solicit Morgan Stanley's clients or misappropriate trade secret information. *See Merrill Lynch v. Kramer*, 816 F. Supp. 1242, 1248 (N.D. Ohio 1992) ("There is nothing in the agreement which prohibits Mr. Kramer from continuing with his occupation as a broker in the securities industry."). Under well-settled

Illinois law, a non-solicitation agreement is subject to a lower degree of scrutiny than a covenant not to compete. *Lawrence and Allen*, 685 N.E.2d at 442.

In *Morgan Stanley v. Rothe*, where the Court issued temporary injunctive relief on behalf of Morgan Stanley, the Court recognized that: "The reasonable, limited Agreement is meant to ensure only that the defendant himself does not reach out to his former clients." *Morgan Stanley v. Rothe*, 150 F. Supp.2d 67, 74 (D.D.C. 2001). Morgan Stanley's Agreement ensures that Glazer does not divert the "lifeblood" of Morgan Stanley's business – its clients.

Glazer's contractual promise not to solicit Morgan Stanley employees (Exhibit "A" at paragraph 3.3) is fully enforceable under New York and Illinois law as well. *See, e.g., Veraldi v. American Analytical Laboratories*, 706 N.Y.S.2d 158, 160 (N.Y. App. Div. 2000) (prohibition against soliciting employees "does not violate public policy and, therefore, is enforceable."); *Arpac Corp. v. Murray*, 589 N.E.2d 640, 650 (Ill. App. 1992) ("Because it appears that the covenant restricting the solicitation of Arpac's employees was reasonably calculated to protect Arpac's interest in maintaining a stable workforce, we find that this portion of the restrictive covenant was enforceable and not void."); *see also Smith Barney v. Robinson*, 12 F.3d 515, 519 (5th Cir. 1994) (enforcing one year non-solicitation of employees provision; "the Agreement does not restrain Robinson from exercising a lawful profession, trade or business.... Robinson is free to recruit stockbrokers or employees for Morgan Keegan -- anywhere, any time, and from any organization -- save only that small class comprising Smith Barney's employees, a class which he willingly agreed not to solicit.").

In his Agreement, Glazer also consented to a TRO and preliminary injunction to enforce his non-solicitation and confidentiality covenants. (Exhibit "A" at paragraph 4). Morgan Stanley seeks only to enjoin Glazer from unfairly competing with Morgan Stanley by violating

8

his agreement not to solicit clients or employees of Morgan Stanley, or from misusing its confidential client information. Morgan Stanley's injunction will not prevent Glazer from working for a competitor and will not unduly impact Glazer's ability to pursue his living as a financial advisor. An injunction merely will serve to protect Morgan Stanley's basic contract and trade secret rights and ensure that its clients are not wrongfully solicited away.

### ii. Misappropriation And Misuse Of Morgan Stanley's Trade Secret Client List And Client Information

A temporary restraining order and preliminary injunctive relief prohibiting further solicitation of clients of Morgan Stanley is also necessary to protect Morgan Stanley's trade secret client list and client information from further misappropriation and misuse for Glazer's own personal use and for the benefit of a Morgan Stanley competitor.

Even in the <u>absence</u> of the explicit non-solicitation/non-disclosure covenants to which Glazer agreed, Morgan Stanley's client information qualifies as trade secret under the Illinois Trade Secrets Act, 765 ILCS 1065, which expressly provides for the issuance of injunctions upon actual <u>or threatened misappropriation</u>. *See* 765 ILCS 1065/3(a).

The Illinois Trade Secrets Act defines a trade secret as follows:

> <u>"Trade secret" means information</u>, including, but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, <u>financial data, or list of actual or potential customers</u> or suppliers, that: (1) is sufficiently secret to derive independent economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d) (emphasis added).

Morgan Stanley's client list clearly is a trade secret under the Illinois Trade Secrets Act. The economic value of the client list formerly serviced by Glazer is significant, representing over

$40 million in assets under management. (*See* accompanying Affidavit). The information pertaining to Morgan Stanley's clients is not generally known to its competitors. In addition, Morgan Stanley has instituted more than reasonable security procedures to maintain the secrecy of its customer information, including requiring Glazer to sign the nondisclosure and non-solicitation covenants at issue. *(See* accompanying Affidavit).

Accordingly, courts in Illinois consistently have afforded trade secret status to the exact type of client information at issue here. *See, e.g., Merrill Lynch v. Cross*, 1998 U.S. Dist. LEXIS 3188 at *5 (N.D. Ill. 1998) ("Customer lists are entitled to trade secret protection under Illinois law."); *IDS Life Insurance Co. v. Sun America*, 958 F. Supp. 1258, 1279 (N.D. Ill. 1997) ("We find that plaintiffs' customer lists and files are likely to constitute trade secrets."), *aff'd in part, vac. in part*, 136 F.3d 537 (7th Cir. 1998); *IDS Financial Services, Inc. v. Smithson,* 843 F. Supp. 415, 418 (N.D. Ill. 1994) (same).

Moreover, courts throughout the country also have afforded trade secret status to the client lists of Morgan Stanley and many other securities firms. *See Morgan Stanley v. Rothe, supra*, 150 F. Supp. 2d at 76 (holding that Morgan Stanley's client list is a trade secret under the District of Columbia's Uniform Trade Secrets Act); *Merrill Lynch v. Zimmerman*, 1996 WL 707107 at *2 (D. Kan. 1996) ("[T]he court concludes that … the Documents constitute a trade secret."); *Orbach v. Merrill Lynch*, 1994 WL 900431 (E.D. Mich. 1994) (applying Restatement law and holding that Merrill Lynch's customer list is a trade secret); *Merrill Lynch v. Ran, et al.,* 67 F. Supp.2d 764, 775 (E.D. Mich. 1999) ("Similarly, federal courts have held that Merrill Lynch's customer list is entitled to trade secret status and that confiscation of such a trade secret entitles Merrill Lynch to injunctive relief against the wrongdoer.").

Briefly stated, Morgan Stanley is entitled to temporary injunctive relief based on its trade secrets claim.

### B. Morgan Stanley Has No Adequate Remedy At Law

It also is well established in Illinois that "*the injury to plaintiffs' reputation and good will, and the resulting loss of existing and future business, is incalculable.... The loss of sales and customers as well as the threat of continuation of such losses to a legitimate business interest, as alleged by plaintiffs in the present case, have been held sufficient to constitute irreparable injury.*" *Falcon v. Corr's Beverages, Inc.,* 165 Ill. App. 3d 815, 520 N.E.2d 831, 835 (1st Dist. 1987) *(citing* numerous appellate cases) (emphasis added*). See also A-Tech Computer Services, Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 400, 627 N.E.2d 21, 27 (1st Dist. 1993) ("Once a protectable interest is established, irreparable injury to the plaintiff is presumed if the interest remains unprotected").

That is exactly why Glazer explicitly agreed in his Agreement to a TRO and a preliminary injunction to enforce his nondisclosure and non-solicitation obligations. Indeed, Morgan Stanley will suffer irreparable harm on at least three different levels if an injunction is not granted.

#### i. Unquantifiable Damages

First, Morgan Stanley's damages from Lynch's breaches are impossible to determine with any degree of certainty. In *Merrill Lynch v. Salvano, supra*, 999 F.2d at 215, the Seventh Circuit held that the taking of client information and the soliciting of clients "sufficiently supports the court's determinations regarding irreparable harm and the inadequacy of Merrill Lynch's legal remedy." Consistent with the Seventh Circuit's ruling in Salvano, and the decisions of scores of courts throughout the country, courts in Illinois have ruled – with virtual

unanimity – that the harm to a firm is irreparable where, as here, a former employee solicits clients and misappropriates client information. *See, e.g., IDS Life Insurance Co. v. Sun America*, 958 F. Supp. 1258, 1281 (N.D. Ill. 1997), *aff'd in part, vac. in part*, 136 F.3d 537 (7th Cir. 1998); *IDS Financial Services, Inc. v. Smithson,* 843 F. Supp. 415, 418 (N.D. Ill. 1994) ("Where trade secrets and goodwill are involved, the threat is significant that the harm experienced by the misappropriation of trade secrets will be irreparable.").

### ii. Loss of Confidentiality

Second, irreparable harm lies in the fact that Morgan Stanley clients expect their financial information, their market transactions, and their investment assets to be known only to themselves, Morgan Stanley and the representatives of Morgan Stanley. As one court observed, "[i]rreparable and immeasurable harm lies in the fact that Merrill Lynch clients, when they discover that their financial information, market transactions, and investment assets which they presumed were held in confidence have been disclosed, will lose trust and confidence in Merrill Lynch." *Merrill Lynch v. Kramer*, 816 F. Supp. 1242, 1247 (N.D. Ohio 1992).

### iii. Threat to Office Stability

Third, immediate injunctive relief is necessary to discourage competitor firms from inducing representatives to breach their contracts and divert trade secret client information to a competitor. *See Merrill Lynch v. Patinkin*, 1991 WL 83163 at *6 (N.D. Ill. 1991) ("The Court believes that the denial of the extension of the TRO under the circumstances presented in this case would leave Merrill Lynch vulnerable to the same conduct from other employees. Hence, the potential harm plaintiff faces, on several levels, is enormous.").

In sum, Morgan Stanley will suffer irreparable harm on many different levels unless a TRO and preliminary injunction are granted.

### C. Granting Injunctive Relief Outweighs Denial, Is In the Public Interest And Will Properly Restore the Status Quo

The benefit of injunctive relief to Morgan Stanley far outweighs any detriment to Glazer. An injunction would protect Morgan Stanley's goodwill, business reputation, trade secrets, methods of business operation, and contract rights.

Indeed, the United States Supreme Court explicitly has recognized the importance of protecting trade secret customer lists. In *Kewanee Oil Co. v. Bicron Corp.*, the Supreme Court emphasized the negative costs to society resulting from the conversion of a company's valuable trade secret customer list and ruled as follows:

> The necessity of good faith and honest, fair dealing is the very life and spirit of the commercial world. **It is hard to see how the public would be benefited by disclosure of customer lists**....

416 U.S. 470 (1974) (emphasis added).

By contrast, Glazer has deliberately breached his contractual and trade secret commitments to Morgan Stanley. Moreover, Glazer will not be precluded from engaging in his chosen profession. Morgan Stanley seeks only to enjoin Glazer from unfairly competing with Morgan Stanley by violating his agreements not to solicit customers or prospective customers.

In addition, as the Northern District of Illinois observed in a similar case involving the premeditated breach of contractual and trade secret obligations, "[t]he public has an interest in preventing unfair competition, commercial piracy, misleading solicitations, and in safeguarding the confidentiality of financial records." *IDS Life Insurance Co. v. Sun America, supra*, 958 F. Supp. at 1282: "Consequently," the court explained, "the public's interest has been disserved by defendants' actions" because "[**t]he public has no interest in destroying contracts, rewarding theft, and encouraging unethical business behavior**." *Id.* (emphasis added). Similarly, in *Morgan Stanley v. Rothe*, *supra*, the court held that "[t]he court agrees with the plaintiff that by

13

issuing an injunction, the court serves the public interest in protecting trade-secret client lists and other confidential information...." 150 F.Supp.2d at 79. Finally, an injunction will properly restore the status quo as it existed prior to Glazer's unlawful breaches.

### IV. EVEN WHEN ARBITRATION IS REQUIRED, MORGAN STANLEY IS ENTITLED TO INJUNCTIVE RELIEF PENDING ARBITRATION

Even where, as here, a dispute is ultimately resolved in arbitration before the Financial Industry Regulatory Authority ("FINRA"), Morgan Stanley is still entitled to injunctive relief pending the outcome in arbitration. Rule 13804 of the FINRA Code of Arbitration Procedure expressly permits a party to seek temporary injunctive relief in Court pending the resolution on the merits before FINRA. Moreover, a party to an arbitration agreement has always been permitted to seek temporary and preliminary injunctive relief in court pending arbitration to preserve the status quo and to prevent the arbitration from being rendered a "hollow formality". *See, e.g., Blumenthal v. Merrill Lynch*, 910 F.2d 1049, 1053 (2nd Cir. 1990) ("Arbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute. A district court must ensure that the parties get what they bargained for -- a meaningful arbitration of the dispute.") (citations omitted).

## **CONCLUSION**

For all of the foregoing reasons, Morgan Stanley respectfully requests that its Motion for a Temporary Restraining Order and Preliminary Injunctive Relief be granted.

Dated: December 19, 2017　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　MORGAN STANLEY SMITH BARNEY LLC


By:　/s/ Jerry M. Santangelo
　　　One of Its Attorneys

Jerry M. Santangelo, Esq.
NEAL GERBER & EISENBERG, LLP
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602
312-269-8000
312-269-1747 (fax)
Attorneys for Plaintiff

*Of Counsel*:

Christopher C. Coss
Thomas J. Momjian, Esq.
COSS & MOMJIAN, LLP
111 Presidential Boulevard, Suite 214
Bala Cynwyd, PA 19004
610-667-6800
610-667-6620 (fax)

27243789.1