IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORGAN STANLEY SMITH BARNEY LLC, | : |
| Plaintiff, | : |
| | : Civil Action No. |
| v. | : |
| STEVEN GLAZER, | : |
| Defendant. | : |

## AFFIDAVIT OF BLAKE MACKENZIE

I, Blake Mackenzie, being duly sworn, depose and state that if called as a witness in these proceedings I would testify as follows:

1. I have knowledge of all facts contained in this Affidavit and can testify truthfully to those facts if called upon as a witness under oath.

2. I am a Managing Director and Complex Manager for Plaintiff Morgan Stanley Smith Barney LLC ("Morgan Stanley"). I have supervisory responsibility for Morgan Stanley's Deerfield, Illinois office in which Defendant, Steven Glazer ("Glazer"), formerly was employed. This Affidavit is made in support of Morgan Stanley's Motion for a Temporary Restraining Order and Preliminary Injunction against Glazer.

3. Glazer resigned his employment on Friday, December 15, 2017 to work at a competitor, Asset Management Group, Ltd. ("Asset Management Group"), located in a nearby office. Since resigning from Morgan Stanley, Glazer has been actively soliciting clients in violation of his Financial Advisor Employment Agreement ("Agreement"). (A copy of Glazer's Agreement is attached as Exhibit "A" to the Complaint).

4. In further violation of his Agreement, I have reason to believe that Glazer

improperly retained and now is using Morgan Stanley's confidential client information. In fact, only a week prior to his resignation, one of Glazer's former assistants, Stacey Ness, emailed him a document entitled "Last Review Sheet." (Exhibit "B" to the Complaint). This Last Review Sheet included client identities as well as account numbers and asset information on at 100 client accounts.

5. On the same day he resigned, Friday, February 15, Glazer emailed this Last Review Sheet, containing all of this highly confidential and proprietary client information, to his personal gmail address. (*Id.*). Even more troubling, the time on Glazer's email is 7:55 PM, after he resigned from Morgan Stanley. (*Id.*). In other words, it appears based on the timing of Glazer's email, before his access to Morgan Stanley's systems was shut off, Glazer emailed from his Morgan Stanley email address to his personal gmail address the Last Review Sheet.

6. Also, only two days before resigning, Glazer emailed from his Morgan Stanley email address to his personal grmail address confidential and proprietary information on another Morgan Stanley client. (Exhibit "C" to the Complaint). This particular email was sent at 10:09 PM, hours after the office had closed for the day.

7. In addition, I believe that Glazer secretly confiscated *original client files on dozens of Morgan Stanley clients*. In particular, the evening Glazer resigned, we discovered that cabinet drawers in his work space had been cleared of all client fil documentation. Based on the information provided to me by one of his former assistants, Stacey Ness, my understanding is that these confiscated original files included, among other things, sensitive client financial information and investment proposals for Morgan Stanley's clients and/or prospective clients.

8. By way of background, Glazer signed the Agreement at the commencement of his employment with Morgan Stanley in 2011. Glazer received valuable consideration in exchange

for signing the Agreement, including being provided with securities training, registrations, and a salary.

9. In paragraph 2.1 of the Agreement, Glazer expressly agreed that all client information, including "(a) customer files, lists, . . . (b) the names, addresses, telephone numbers" are "valuable and proprietary to MSSB" and "highly confidential." In paragraph 2.3 of his Agreement, Glazer agreed that he would not use Morgan Stanley's confidential client information for any purpose other than conducting business at Morgan Stanley and that if his employment ever terminated, he would immediately return all such information to Morgan Stanley. In paragraph 2.4 of his Agreement, Glazer further agreed that he would not disclose any confidential information to anyone, either during or subsequent to his employment at Morgan Stanley, except in the ordinary course of Morgan Stanley business.

10. Paragraph 3.2 of Glazer's Agreement, entitled "Unfair Competition", contains his non-solicitation covenant. Specifically, Glazer promised as follows: "For a period of one year following termination of your employment for any reason, you will not solicit or attempt to solicit, directly or indirectly, any of MSSB's customers who were serviced by you, or whose names became known to you, while in the employ of MSSB, with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which MSSB or any of its affiliates is engaged." In paragraph 3.3, Glazer further agreed not to solicit co-employees.

11. Glazer acknowledged that Morgan Stanley would be entitled to injunctive relief to the extent he breached his obligations under the Agreement. Paragraph 4 of Glazer's Agreement expressly provides, in part: "You understand and agree that MSSB will suffer immediate and irreparable harm and that money damages will not be adequate to compensate MSSB or to

3

protect and preserve the status quo pending arbitration. . . ."

12. Glazer's commitment to maintain the confidentiality of Morgan Stanley's client information is also set forth in other agreements. (*See, e.g.*, Exhibit "D" to the Complaint).

13. On Friday, December 15, 2017, Glazer resigned for a competitor. At first, Glazer did not even submit a resignation letter. He then handwrote a resignation letter at the time he resigned. (Exhibit "E" to the Complaint).

14. Immediately upon resigning, Glazer began actively soliciting Morgan Stanley clients. Specifically, Morgan Stanley has received reported from multiple clients that Glazer reached out to them since his resignation on Friday, December 15. The clients Glazer serviced and now is targeting on behalf of a competitor represent over $40 million in assets entrusted to Morgan Stanley.

15. Not only is Glazer soliciting Morgan Stanley clients in violation of his Agreement, Glazer appears to have improperly retained voluminous confidential information pertaining to Morgan Stanley clients, including original client files.

16. The evening he resigned, Glazer also appears to have emailed himself very confidential and proprietary information including account numbers and asset information on over 100 client accounts.

17. Client information including identities, account numbers, investment holdings and other financial information is confidential and the exclusive property of the firm. In addition, clients consider their financial information to be highly secret and expect Morgan Stanley to take reasonable precautions to ensure their confidentiality. Morgan Stanley has implemented strict measures to ensure that highly secret and confidential customer information is secured and not available to the public. These steps obviously include the Agreement signed by Glazer which

4

provides that client information is confidential and cannot be used for any purpose other than conducting the business of Morgan Stanley.

18. The <u>Code of Conduct</u> further confirms the confidential nature of Morgan Stanley's client information. Morgan Stanley also has an annual compliance review. As part of this annual compliance review, employees such as Glazer are required to confirm their understanding that client information is confidential. Furthermore, Morgan Stanley also assigns secret computer passwords to limit access to client information on a "need to know basis". Glazer undoubtedly was fully aware of the steps taken by Morgan Stanley to protect its client information.

19. Glazer's actions have caused very significant and unquantifiable damage to Morgan Stanley. Morgan Stanley spends millions of dollars every year on developing and maintaining its customer base, including advertising, training, equipment, salaries, registration and licensing fees, and many other expenses, all of which are very considerable. In return, we expect our employees to honor their commitments. Significantly, there is nothing in his Agreement which prevents Glazer from working for a competing firm, even one located right across the street. Glazer's Agreement simply prevents him from soliciting the clients whom he served or whose identities he learned while with working at Morgan Stanley.

20. Finally, it is critical that the Court grant relief immediately. If our clients are diverted away, we will lose these relationships for years into the future. The damages that flow from that are huge but extremely difficult to quantify. So too is the negative impact and loss of goodwill resulting from the fact that confidential client information, entrusted to Morgan Stanley, has been confiscated without the knowledge or consent of clients.

21. I also am very concerned about the message it will send to other employees if

Glazer can ignore his contract and trade secret obligations, and without any consequences.

22. No prior relief has been requested.

_____
Blake Mackenzie

Sworn to before me this 18 day of December, 2017.

_____
Notary Public

Official Seal
Leslie Diane Mercier
Notary Public State of Illinois
My Commission Expires 07/18/2021

6